Hon. Tiffany M. Cartwright

# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### TACOMA DIVISION

| | |
|---|---|
| SHAYNA MARIE LANDIN, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>Vs.<br><br>HI-SCHOOL PHARMACY SERVICES, LLC, and HI-SCHOOL PHARMACY, INC.,<br><br><br>Defendant. | Case No.: 3:24-cv-05115-TMC<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Noting Date: July 31, 2025 |

## I.    INTRODUCTION

The administration of the Settlement Agreement, to date, has been an overwhelming success. Of the approximately 17,662 individuals in the Settlement Class, only two have opted out and no class member has objected. The Notice Plan has obtained an excellent result: a claims rate that exceeds 4.3%. The proposed settlement, which provides for a non-reversionary Settlement Fund of $600,000 from which benefits to Settlement Class Members will receive meaningful monetary and non-monetary relief, commensurate with the alleged damages they sustained. Reached through arm's-length negotiations after contested litigation by experienced and well-informed counsel, the Settlement will deliver tangible, immediate benefits to Settlement Class Members, addressing the potential harms of the data breach without protracted and inherently risky litigation.

Plaintiff Shayna Marie Landin ("Plaintiff"), by and through her undersigned counsel, respectfully request this Court grant Plaintiff's Motion for Final Approval of this Class Action Settlement so that Plaintiff may begin the process of distributing benefits to those members of the Settlement Class who have submitted valid claims. Because the proposed Settlement is fair, reasonable, and adequate, and because it satisfies all the requirements of Rule 23, the Court should finally certify the Settlement Class and grant final approval of the Settlement Agreement.

## II.    BACKGROUND

Plaintiff incorporates Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval") (ECF No. 25) and Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award ("Motion for Attorneys' Fees") (ECF No. 29) by reference. Briefly summarized, the Settlement Agreement provides for a $600,000

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 2

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Settlement Fund. *See* Settlement Agreement ("S.A.") ¶ 49. Settlement Class Members may claim: (a) Documented Out-of-Pocket Losses of up to $5,000 upon submission of a claim and supporting documentation; (b) in lieu of Documented Out-of-Pocket Losses or Identity Theft Protection and Credit Monitoring, Settlement Class Members may submit a claim for a pro rata cash payment from the Settlement Fund; and/or (c) in addition to Documented Out-of-Pocket Losses, or in lieu of a Pro Rata Cash Payment, Settlement Class Members may submit a Claim to accept two years of free identity theft and credit monitoring services. *Id.* ¶¶ 50–52.

## A.    The Notice Program has been successfully implemented.

As directed by this Court's Preliminary Approval Order, the Parties worked diligently to implement the Notice Plan in coordination with the approved Claims Administrator, Simpluris. Using records provided by Defendant, Simpluris fully implemented the comprehensive notice program consisting of direct-mail Postcard notice, a website, and a toll-free number. As detailed below and in the contemporaneously filed Declaration of Shelby Alvey on behalf of Settlement Administrator Simpluris Inc. ("Admin Decl."), the Notice Plan is now complete, and the results have been overwhelmingly successful.

### 1.    Class Action Notice Program

Simpluris received the class data on March 24, 2025, with a total of 17,662 records. Admin Decl. ¶ 7. After de-duplicating the data, Simpluris determined that the Settlement Class Member population consists of 17,309 unique records. *Id.* ¶ 8. Of the 17,309 class members, 17,308 had an address sufficient to attempt mailing. *Id.* ¶ 9.

Simpluris caused the Short Form Notice (in the form of a double postcard) to be mailed via First-Class Mail ("Postcard Notice") to Settlement Class Members for which a mailing address was available. *Id.* The Postcard Notice included (a) the web address to the case website

---

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 3

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1   for access to submit a claim and provide additional information, (b) rights and options as a

2   Settlement Class Member and the dates by which to act on those options, and (c) the date of the

3   Final Approval Hearing. *Id.* at Ex. A. The Notice mailing commenced on or before April 10,

4   2025, in accordance with the Preliminary Approval Order. *Id*. ¶ 9

5           Prior to the mailing, all mailing addresses were checked against the National Change of

6   Address (NCOA) database maintained by the United States Postal Service ("USPS"). *Id.* ¶ 8.

7   Following the initial mailing campaign, 2,148 Notices were returned undeliverable, and

8   following an advanced address search, Simpluris was able to re-mail 1,537 Notices for which

9   Simpluris was able to obtain an alternative mailing address. *Id*. ¶ 10.

10          On June 25, 2025, Simpluris sent a Reminder Email Notice to 11,146 Settlement Class

11  Members for whom a valid email address was located via skip trace. *Id.* ¶ 11. Of those 11,146

12  Settlement Class Members, Simpluris successfully delivered the Reminder Email Notice to

13  10,408 Settlement Class Members. *Id.*

14          On April 10, 2025, Simpluris published the Settlement Website. *Id.* ¶ 12. Visitors to the

15  Settlement Website can download the Long Form Notice, the Claim Form, as well as Court

16  Documents, such as the Class Action Complaint, the Settlement Agreement, the Preliminary

17  Approval Order, Orders of the Court, and other relevant documents. *Id.* Visitors were also able

18  to submit claims electronically, find answers to frequently asked questions (FAQs), see

19  important dates and deadlines, and find contact information for the Settlement Administrator *Id.*

20          On April 10, 2025, Simpluris established a dedicated toll-free telephone number, which

21  is available twenty-four hours per day for the purpose of allowing Settlement Class Members to

22  make inquiries regarding the Settlement. *Id.* ¶ 13. The toll-free number appeared in all Notices,

23

24

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 4

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

as well as in multiple locations on the Settlement Website. *Id.* The toll-free number will remain active through the close of this Settlement Program. *Id.*

### 2.    Class Action Fairness Act ("CAFA")

On July 17, 2025, pursuant to 28 U.S.C. §1715(b), Simpluris, on behalf of the Defendant, caused notice of this Settlement and related materials to be sent to the Attorneys General of all U.S. states, District of Columbia, Puerto Rico, as well as the Attorney General of the United States. *Id.* ¶ 19. Because the CAFA notice was sent on July 17, 2025, Plaintiffs request that, in the event the Court is inclined to grant Final Approval, the Court set a further hearing, at least ninety-five (95) days from July 17, 2025 to determine whether any Attorney General objects to the Settlement. *See, e.g.*, *Hamilton v. NuWest Group Holdings LLC*, No. 2:22-cv-01117-RSM, Dkt. No. 138 (July 1, 2025).

### 3.    Effectiveness of Notice

Through the Notice procedures outlined above, Simpluris attempted to send direct notice to 17,308 of the 17,309 Settlement Class Members. *Id*. ¶ 8–9. As of July 8, 2025, the Notice Program reached a total of 16,697 (96.5%) Settlement Class Members. *Id.* ¶ 10.  As of July 8, 2025, Simpluris has received a total of 752 valid and timely claims submissions, representing 4.34% of the Settlement Class. *Id.* ¶ 16. The deadline to submit a request for exclusion or objection was June 9, 2025. *Id.* ¶¶ 17–18. Only two (2) class members have opted out, and no class member has objected. *Id.* ¶¶ 15–18. This is an excellent claims rate, and when combined with the low number of opt-outs and lack of objections, signifies overwhelming approval for the settlement.

---

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### III.    ARGUMENT

Plaintiff respectfully requests that the Court grant final certification of the Settlement Class because: (1) the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3); (2) the Court-approved notice program satisfies both Rule 23 and due process requirements and has been fully implemented pursuant to the Court's requirements; and (3) the Settlement is fair, reasonable, and adequate.

#### A.  The Settlement Continues to Merit Certification

A threshold inquiry at final approval is whether the Class satisfies the requirements of Rule 23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998). The Court completed this first step in the settlement approval process when it granted preliminary approval and provisionally certified the Settlement Class. *See* ECF No. 27. Here, the Court's Preliminary Approval Order made specific findings that the Class met each of the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. *Id.* Likewise, the Court found the Settlement Class meets each of the Rule 23(b)(3) requirements: questions of law and fact common to the members of the class predominate over any questions affecting only individual class members, and a class action is superior to other available methods of fairly and efficiently adjudicating this controversy. *Id.* Plaintiff respectfully submits that nothing has changed since these findings were made, and they remain accurate. Because no relevant facts have changed since the Court certified the Settlement Class the Court need not revisit class certification here. *Aikens v. Panatte, LLC*, No. 2:17-cv-01519, Dkt. #54 (W.D. Wash. Feb. 5, 2019); *Ewing v. Admin. Sys., Inc.*, No. C08-0797 RAJ, 2009 WL 10725426, at *1 (W.D. Wash. Sept. 30, 2009); *see also Jamil v. Workforce Res., LLC*, No. 18-CV-27 JLS (NLS), 2020 WL 6544660, at *3 (S.D. Cal. Nov. 5, 2020).

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

### B.    Notice Satisfies Due Process

Prior to granting final approval, this Court must consider whether the members of the class received adequate notice of the settlement. Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Specifically, the court must find that the notice to the class was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "[T]he rule does not insist on actual notice to all class members in all cases." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v Direct Digital LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). Although what constitutes the "best notice practicable" is case-specific, the Federal Judicial Center has noted that a notice campaign that reaches 70% of a class is often reasonable and satisfies due process. Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide* 3 (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

The claims rate here is outstanding at 4.34%, which is considered a "good" response rate for a data breach case and, indeed, exceeds the response rates obtained in other class action settlements. *See Hightower v. Receivables Performance Mgmt.*, No. 2:22-cv-01683, Dkt. #85 (W.D. Wash Dec. 13, 2024) (approving data breach settlement with 0.65% claims rate); *Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156, 2024 WL 3903550, at *3 (D. Neb. Aug. 21, 2024) (finding parties' efforts to afford class members the opportunity to obtain relief satisfied the Federal Rules and due process when 95,644 class action notices were sent to the settlement class and 1,200 members filed claims, and noting that "[w]hile low, the claims rate is not unusual for data breach cases like this"); *see also Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (approving claims rate of .83%); *Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (approving

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 7

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

settlement with response rate of "about two percent"); *Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488, 2015 WL 12731932, at *27 (C.D. Cal. Mat 14, 2015) (approving settlement with "response rate of less than 1%").

The Court already provisionally approved the Notice Plan proposed by Plaintiff and Class Counsel, including the forms of Plaintiff's Short Notice and Long Form Notice, finding that they complied with the requirements of Rule 23 and due process. The Court also approved of Plaintiff's proposed manner of distribution of notice forms as compliant with the requirements of Rule 23 and due process.

The implementation of that Notice Plan was successful in all aspects. The Notice Plan as designed and implemented reached approximately 96.5% of the identified Settlement Class. *See* Admin. Decl. ¶¶ 9–10. That figure far exceeds the constitutional due process requirement in this Circuit. *See, e.g.*, *Askar v. Health Providers Choice, Inc.*, No. 19-CV-06125-BLF, 2021 WL 4846955, at *3 (N.D. Cal. Oct. 18, 2021) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.") (citation omitted). Finally, all forms of notice accurately described the Settlement and directed the recipient to the Settlement Website where further information was available.

The Court should therefore find that the Notice Plan, as executed, satisfied Rule 23(c)(2)(B) and fully complied with due process requirements.

## C. The Settlement Should be Finally Approved Pursuant to Rule 23(e)

To approve a class action settlement as fair, reasonable, and adequate, Rule 23(e)(2) requires the Court to consider "whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 8

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including

the method of processing class-member claims; (iii) the terms of any proposed award of

attorney's fees, including timing of payment; and (iv) any agreement required to be identified

under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

At the final approval stage, the court considers the settlement in light of a non-exhaustive list of

factors—the so-called *Churchill* factors—including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
> duration of further litigation; (3) the risk of maintaining class action status
> throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
> completed and the stage of the proceedings; (6) the experience and views of
> counsel; (7) the presence of a governmental participant; and (8) the reaction of the
> class members of the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanson v. MGM

Resorts Int'l*, No. 16-cv-1661-RAJ, 2018 WL 3630284, at *4 (W.D. Wash. July 31, 2018). Not

surprisingly, there is overlap between the 23(e) fairness, reasonableness, and adequacy

considerations and the factors set out in the Ninth Circuit test in *Churchill*, 361 F.3d at 575. The

Ninth Circuit has instructed that the court's 23(e)(2) analysis should be guided by the *Churchill*

factors. *See Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *In re Bluetooth Headset Prod.

Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

### D. Class Counsel and the Class Representative Have Adequately Represented the Settlement Class

Plaintiff and Class Counsel have represented the Class adequately in connection with

both the litigation and the Settlement. Plaintiff has claims that are typical of, and coextensive

with, those of the Class, and they have no interests that are antagonistic to other members of the

Class. *See Hanlon*, 150 F.3d at 1020. Indeed, Plaintiff shares the primary goal with the Class of

obtaining the largest possible recovery from Defendant. Class Counsel diligently represented

the Class throughout the course of this complex and hard-fought litigation. Class Counsel, who are experienced in representing plaintiffs in class action and data privacy cases, have spent over a year litigating this case and advocating for the Class. As a result of their efforts, the Settlement provides considerable monetary relief to participating Settlement Class members. By any measure, Class Counsel's efforts constitute adequate representation of the Class.

**E.     The Settlement Has No Indicia of Collusion and is the Result of Hard-Fought Negotiations Before an Experienced Mediator**

The Ninth Circuit instructs courts to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). When approving a settlement prior to class certification the Court is required to engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946.

The Settlement here was the result of arm's length negotiations conducted under the guidance of experienced mediator Jill Sperber. The fact that the parties reached the Settlement with the assistance of a neutral mediator is a "factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth*, 654 F.3d at 948. Courts within the Ninth Circuit "have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11–CV–00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013); *see also Garner v. State Farm Mut. Auto. Ins. Co.*,

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 10

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." (internal quotation omitted)); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Finally, the Settlement here has none of the indicia of possible collusion identified by the Ninth Circuit, such as a disproportionate requested attorneys' fee, a "clear sailing" fee agreement separate and apart from class funds, or the reversion of unpaid fees to the defendant. *See In re Bluetooth*, 654 F.3d at 947. And, while Class Counsel's fee will be determined separately, as explained in Class Counsel's Motion for Attorneys' Fees, they seek a recovery that is consistent with Ninth Circuit precedent, reflects their work performed, and is proportionate to the total benefit provided. Accordingly, all evidence indicates that this Settlement was not "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 324–25 (C.D. Cal. 2016) (quotation omitted).

## F.     The Relief Provided in Settlement Is Fair and Adequate in Light of the Risk and Complexity of the Case

In Plaintiff's Motion for Preliminary Approval, Plaintiff provided an in-depth discussion regarding the fairness and adequacy of the Settlement. In granting preliminary approval to the Settlement, this Court agreed that the settlement was fair and adequate, particularly when considering the costs, risks, and delay associated with proceeding to trial and potential appeal. ECF No. 27. Here, evaluating the risks of continued litigation against the scope of relief this Settlement provides to the Class, the Settlement also merits final approval.

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 11

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1      **1.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

2          This Settlement is excellent not only because of the valuable benefits obtained for the

3  Settlement Class (both monetary and non-monetary), but also because Plaintiff would have

4  faced significant risks in litigating this case through trial. Nearly all class actions involve a high

5  level of risk, expense, and complexity, which is why there is a judicial policy favoring amicable

6  resolutions. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). That is even

7  more true for a complex class action case like this, in an uncertain and ever-developing area of

8  the law. Some data breach cases have faced hurdles in surviving even the pleading stage. *See,*

9  *e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL

10  2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting cases). Moreover, to Class Counsel's

11  knowledge, no data breach class action has ever been tried, let alone resulted in a final judgment

12  in favor of a class.

13          Each of these risks poses a risk that Settlement Class Members could end up losing the

14  case at or before trial and recovering nothing at all. Generally, "unless the settlement is clearly

15  inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

16  uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.

17  Cal. 2004). Thus, this factor favors approval.

18      **2.     The Risk of Maintaining Class Action Status Through Trial**

19          If this case were to proceed forward in adversarial litigation, Plaintiff faced the

20  additional risk of maintaining class certification through trial because Defendant would fiercely

21  oppose class certification. Assuming Plaintiff was able to proceed forward after obtaining a

22  ruling certifying a contested class, she would still face risks and delays in maintaining and

23  litigating her class claims. The Ninth Circuit recognizes the inherent risk that "[a] district court

24

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 12

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Even if the Court were to certify the class, there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class."). Moreover, even if Plaintiff was successful in obtaining class certification and prevailing at trial, the risk of one or more lengthy appeals would be high. All the while, any relief to Settlement Class Members would remain in limbo and be delayed. Accordingly, the risk and uncertainty surrounding certification of the Class also supports approval of the Settlement.

### 3.    The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval. As discussed above, the Settlement makes significant relief available to Settlement Class Members in the form of reimbursement for Out-of-Pocket Losses, cash fund payments, and credit monitoring. This Settlement is a strong result for the Class, and as discussed extensively at Preliminary Approval, the amount offered is in line with other settlements in cases involving data breaches of similar scope. The relief offered by the Settlement is also reasonable in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).[1]

### 4.    The Extent of Discovery Completed and the Stage of Proceedings

Plaintiff was well informed about the strengths and weaknesses of this case before entering into settlement discussions on behalf of class members. Plaintiff sought and received

---

[1] Plaintiff separately filed a Motion for Attorneys' Fees, Costs, and Service Awards. To date, no class member has objected to the settlement at all, let alone to counsel's fee request.

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 13

informal discovery prior to mediation from Defendant related to the scope of the Data Incident, the merits of Plaintiff's claims, Defendant's potential defenses, the size of the Class, and other issues relating to class certification. Class Counsel were therefore able to draw on their extensive experience in privacy and data protection litigation to efficiently uncover the relevant information bearing on the critical issues in this case. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Accordingly, Plaintiff "had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 4052588, at *5 (W.D. Wash. Feb. 3, 2016); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This factor, too, supports final approval.

### 5.    The Experience and Views of Class Counsel

Class Counsel are experienced class action litigators in the field of data breach and data privacy litigation and recommend the Settlement as being fair, reasonable, and adequate and in the best interests of the Class Members. *See* Declaration of Gary M. Klinger in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, ECF No. 26. A great deal of weight is afforded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Norton v. Maximus, Inc.*, NO. 1:14-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecom. Coop.*, 221 F.R.D. at 528. In light of the complexities of the case and the risks of continuing through further discovery, class certification, summary judgment, trial, and inevitable appeals—not to mention collecting on any judgment—Class Counsel firmly believes that the Settlement represents a

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 14

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

favorable resolution of this litigation. "Absent fraud or collusion, courts can, and should, rely upon the judgment of experienced counsel for the parties, when assessing a settlement's fairness and reasonableness." *Demmings v. KKW Trucking, Inc.*, No. 3:14-CV-0494-SI, 2018 WL 4495461, at *9 (D. Or. Sept. 19, 2018) (internal quotations omitted). Thus, Class Counsel's recommendation that the Settlement is fair, reasonable, and adequate "strongly favor" approval. *Lane v. Brown*, 166 F. Supp. 3d 1180, 1191 (D. Or. 2016).

### 6.    Governmental Participants

Notice pursuant to CAFA was issued on July 17, 2025. Admin Decl. ¶ 19. Due to an administrative oversight, CAFA notice was not sent out earlier. However, because the ninety-day period for the States' Attorneys General has not yet elapsed, Plaintiffs request that the Court set a further hearing for ninety-five (95) days from the issuance of CAFA notice to determine whether any Attorneys General wishes to object to the Settlement. The parties will submit a status report after the close of the CAFA notice period to update the Court on any responses to the notice. Plaintiffs request that the Court nevertheless proceed forward with the Fairness Hearing set for July 31, 2025, pursuant to the notices sent to the Class. At the Fairness Hearing, the Court can review the terms of the settlement and requested fees, costs, and service award, subject to a final ruling after the hearing held post-completion of the CAFA notice. *See, e.g.*, *Hamilton v. NuWest Group Holdings LLC*, No. 2:22-cv-01117-RSM, Dkt. No. 138 (July 1, 2025) (holding final approval hearing to review the settlement terms and setting subsequent zoom hearing post-completion of the CAFA notice to enter final approval).

### 7.    The Reaction of Class Members to the Proposed Settlement

The reaction of the Class Members to the Proposed Settlement has been positive and supports approval. The number of class members who object to a proposed settlement "is a

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 15

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

factor to be considered when approving a settlement" and the "absence of significant numbers

of objectors weighs in favor of finding the settlement to be fair, reasonable and adequate." *Lane*,

166 F. Supp. 3d at 1191 (internal quotation omitted). "When few class members object, a court

may appropriately infer that a class action settlement is fair, adequate, and reasonable."

*Schneider v. Wilcox Farms, Inc.*, No. 07-CV-01160-JLR, 2009 WL 10726662, at *3 (W.D.

Wash. Jan. 12, 2009). Here, *no class members have objected*. Admin. Decl. ¶ 18. *See* 4

Newberg on Class Actions, § 11:48 (4th ed. 2002) ("Courts have taken the position that one

indication of the fairness of a settlement is the lack of or small number of objections." (citations

omitted)).

Moreover, as of July 7, 2025, Simpluris has received only two valid requests for

exclusion. Admin. Decl. ¶ 16. This near total lack of opposition is a strong indication that the

class supports the settlement. *See Clemans v. New Werner Co.*, No. 3:12-cv-5186, 2013 WL

12108739, at *5 (W.D. Wash. Nov. 22, 2013) (in settlement where one objection and four

exclusions were filed, court found that "the overwhelming non-opposition to and participation

in the Settlement [are] strong indications of Class Members' support for the Settlement as fair,

adequate, and reasonable."); *see also Rodriguez*, 563 F.3d at 967 (concluding that the district

court "had discretion to find a favorable reaction" when 54 of 376,301 class members objected

to settlement); *Hughes v. Microsoft Corp.*, No. C98–1646C, C93–0178C, 2001 WL 34089697,

at *8–9 (W.D. Wash. Mar. 26, 2001) (granting final approval where "less than 1% of the class

opted out and only nine objections were submitted").

Accordingly, the Class's supportive reaction to the Settlement favors final approval.

---

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 16

**G.    The Settlement Treats Settlement Class Members Equitably**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), adv. comm.'s note (2018). In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Paredes Garcia v. Harborstone Credit Union*, No. 3:21-cv-05148-LK, 2023 WL 4315117, *5 (W.D. Wash. July 3, 2023) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement does not improperly discriminate between any segments of the class, as all Settlement Class Members are entitled to the same relief. Likewise, the provision for a service award for Plaintiff is consistent with the equitable treatment of class members. The requested service award of $3,000.00 is reasonable and in line with awards granted in similar cases. *See, e.g.*, *Roe v. Frito-Lay, Inc.*, No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000.00 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (approving service awards of $5,000.00). Moreover, as the service award falls in line with the caps on claims for monetary relief in the settlement, there is not a "'significant disparity between the incentive awards and the payments to the rest of the class members' such that it creates a conflict of interest." *Spann*, 314 F.R.D. at 328 (citing *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013)).

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 17

In sum, the Settlement treats all Class Members equitably relative to each other, and final approval is appropriate.

## IV.    CONCLUSION

Plaintiff respectfully submits that the settlement is fair, reasonable, and adequate and should be approved. Following completion of the CAFA notice period, Plaintiffs respectfully request the Court enter Plaintiff's proposed form of judgment.

I certify that this memorandum contains 4,913 words, in compliance with the Local Civil Rules.

Date: July 17, 2025

Respectfully Submitted,

**TOUSLEY BRAIN STEPHENS PLLC**

By: */s/ Cecily C. Jordan*
Cecily C. Jordan, WSBA #50061
Kaleigh N. Boyd, WSBA #52684
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101-3147
Telephone: (206) 682-5600
cjordan@tousley.com
kboyd@tousley.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

*Counsel for Plaintiff and the Proposed Class*

**Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs and the Proposed Class*

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:24-cv-05115-TMC - 18